The next matter number 25-1140 United States v. Kamal Mrndzic. At this time would counsel for the appellant please introduce herself on the record to begin. Good morning and may it please the court. I'm Chrissy D'Amaso and I represent Kamal Mrndzic. I'd like to reserve three minutes for rebuttal. You may. This case involved a lengthy trial with evidence spanning from the Bosnian War in the 90s through to modern-day America. The appeal raises complex and related issues. One thread running through some of these issues is the impact of Mr. Mrndzic's acquittals. So counts four five and six charged Mr. Mrndzic with lying to an agent at three separate interviews. Count seven charged him with concealing his alleged role in persecution. The only affirmative acts that count seven charges that are within the statute of limitations are the exact same statements alleged in counts four and five. Four five and six excuse me. Mr. Mrndzic is acquitted of counts four and five. He was also acquitted of concealing his role in direct persecution. He was also acquitted of concealing his role in direct persecution. As the government acknowledged below this means that Mr. Mrndzic was acquitted of lying when he said that he did not harm anyone. This acquitted conduct cannot support the conviction or the sentence. So starting from the conviction. The false statements charged in counts four and five cannot support the conviction on count seven. So now we're left with just looking at count seven based only because of the direct prosecution point. You cite the double jeopardy case, Miguel Rath. Is that right? Which I understand why in the double jeopardy context, you very much need to know what the jury decided because that decides whether you can go again. But in this context, without the direct prosecution, which clouds my thinking a little bit, it seems to me that juries can within one verdict show leniency and say, all right, we're not going to convict on that. We're just going to convict on this and that's a choice they can make. And it doesn't have the double jeopardy ramification. So what is the reason that we can't rely on four and five? Is it the direct prosecution finding that tells us something more about what the jury did? I do think that's a big piece of it. And when I'm thinking about the acquitted conduct piece and how it plays in, the government very much wants to put this sort of in the box of inconsistent verdicts. And we're not claiming that this verdict is inconsistent. I actually think if you look at the verdict overall, it's quite consistent. The jury is again and again acquitting him of directly harming people and that you see that again in the count seven with the direct prosecution acquittal. So yeah, I do think that that is a critical part of this verdict as a whole. And the double jeopardy cases really do apply. If you imagine that this case went back for whatever reason on a non-sufficiency claim, we would be arguing below, hey, he was acquitted of counts four and five. Like we're not doing that again. You can't support any claim that you might bring now with that conduct. And there are acquittals, the fact of those stands. And so I do think that the double jeopardy cases and especially that sort of practical frame in terms of like what does this acquittal mean and what do we do with it? And I think you saw that below. Like I think when you see the judge and probation and the government and the defense looking, arguing at sentencing about what had happened, I think you see that practical frame. And there is this sort of understanding of there was an acquittal here and it was very meaningful. And it sort of distinguished these two, there's these two, you know, what happened. And he was at Cellebici, like he worked there and that existed. But then there was also lots and lots of claims about this sort of personal harm that he had committed. And he is across the board acquitted of that. And I think that is very significant and cannot now come back to support the count seven conviction. Um, so then when we sort of are looking at sort of what's what's left after the acquittals and what happens with count seven and and count six, you know, there's a number of ways and reasons that I think that neither count six nor count seven can stand. Um, one is sort of this council. But with that line of reasoning, I'm kind of following up on what Jay from said. Let me just give you an analogy. We have either a car jacking or a bank robbery or a drug trafficking charge and a 9 24 C. And let's assume a jury acquits, um, you know, the big substance of a charge, but convicts on the 9 24 C. Uh, you could use the same argument. So that's that's inconsistent. He was acquitted. Then he could not have, you know, so wouldn't that also apply that type of scenario under your reasoning? I think again, the key here is that we're not saying that the verdict was inconsistent, and it's actually the government's argument that would introduce inconsistency in the verdict. Sort of assuming that what the jury really did was, you know, make inconsistent findings about these statements when it comes to four and five, they acquit. But when it comes to count seven, they were really considering it. That's introducing an inconsistency that does not exist if you just look practically and clearly at this verdict. Um, if you like, we're not saying that count seven falls simply because of the acquittals on counts four and five. We're saying that count seven when you're deciding whether or not it falls, you cannot bring back the acquitted conduct from four to five to support it independently that you are left with looking at the time barred conduct, which, you know, is the sort of Ponce statement. So your answer is we don't use a sufficiency lens because there was probably sufficient evidence to convict on counts four and five. That doesn't mean the jury has to. But you're saying that's not the way you go about that inquiry. In fact, you look and you do your best from our vantage to try to figure out what does the verdict actually mean? Is that my understanding that correctly? Yes. And I think some of that comes from the cases that talk about, you know, what an acquittal is and what an acquittal means. An acquittal means a finding of insufficiency. And we sort of don't deviate from that, you know, and that's the McElrath and all those other ash, all those other cases. Um, and here we we have that acquittal and it is, you have to kind of project a couple steps, but it is essentially the double jeopardy inquiry. Because again, as I said, you know, imagine this goes back on the expert issue. That's going to be the issue. That's what the district court is going to be doing. And, you know, theoretically that comes back up. So that that really is the inquiry now. Counsel, can I ask you if we agreed with at least parts of your argument? Um, and we were really thinking about remedy. What do we do, given that there are that there is both count six and count seven? And you seem to be focused on us vacating count seven versus count six. I'm just trying to understand how we should then parse through the rest of your arguments. I mean, so far I've started with count seven. I do think that count six, you know, there is a sufficiency argument that pertains to both counts, but sort of count six as well. And that's the materiality count or materiality claim. And, you know, Philip O's quite clearly talks about if an investigation is over, a statement can no longer be material or an affirmative act can no longer be material. And in Philip O's, you know, those statements, I think it's really important to look at the context of what happened there versus what happened here. Those statements in Philip O's are made like 11 days after the Boston Marathon bombing. In the court's introduction, it talks about how these statements were made during the course of a major terrorism investigation. Um, and the court, you know, Mr Philip O's argued my statements were not material. They were done. They had arrested Mr. Tsarnaev. This investigation was over. Nothing I could have said could have impacted it. And the court said no, the jury could have found that that investigation was ongoing, could have found that there was still an ability for a statement to impact that investigation. Here the facts are, so Philip O's sort of recognizes this possibility that, hey, if an investigation is over, even sort of in this abstract, is there a possibility of impacting that it can't if the investigation is done? And here what you have, you know, the sort of American investigation into Mr. Marincic starts arguably in 2012, when the Serbian government sort of flags and says, hey, this is someone that we think, um, may have been, you may have been at Celebići, may have some involvement. And then you have the government. We know they're investigating and truly investigating in 2017, 2019. Um, this agent goes and interviews. This agent writes an email saying, Hey, we, um, you have no case. We think the case is time barred. But if we go talk to him and he lies to us, we could bring those charges. And then in 2022, that agent does go and talk to Mr. Marincic twice. It's not until another year later that the statements in count six happen. So the statements in four and five are 2022. The statements in count three, which are, excuse me, not count three, count six, which are essentially the same getting at the same questions, getting at the same topic that Mr. Marincic has been answering consistently since 1996, right? Since 1996 in the ICTY, he's been saying, Yes, I was a guard there. I did not hurt anyone. I did not see anything myself. And he keeps saying that. And so at that point in 2023, those states given everything, not just the timing, but also the number of times that he has talked about these things that he's talked about them to the same agent and the content of his statements. All of that matters such that the count six statement is not material. That then impacts government believes he's lying. And in fact, the jury ultimately did think he was lying. So it seems it's material in the sense of all right, we're gonna ask him. We continue to think he's lying. We could maybe use his cooperation. We could use his information, and we're going to ask him again because our other evidence tells us he's lying. So where is this idea of the investigation is over a hard stop? Because if he gave a truthful answer, things might have gone differently. I mean, I think that that sort of that would mean that investigations never end. I mean, that would mean that if the agent goes back to someone sort of whenever for eternity, that that investigation continues and continues when they charge him for sure, or at least arguably so. I mean, I would think, but this is before they charged. So well, it's it is sort of instantly before they charge him. And there's even one of the signatures from the prosecutors actually like the day that he's making the state council just to follow up on what Judge Ephraim is saying, because I'm struggling with this too. If he had given a different answer, and I understand you and the government disagree about what's a truthful answer or not, but if he had given an answer that the agent wanted, for lack of a better word, that they thought was truthful, wouldn't that have changed things? That's what I don't quite understand. And certainly what his answer was would have impacted how the agent acted, because if he had suddenly decided to say, yes, I was there, I did see violence, I never participated, but it was wrong, I shouldn't have turned a blind eye, I'm incredibly sorry, whatever along those lines, wouldn't that have impacted what the government did next? And if so, how can we conclude it wouldn't be material what he said? I mean, I think that we're sort of moving sort of far beyond what the test for materiality... I mean, you can always sort of imagine something that could change the course, right? Even if he tells... Even if he gives a different answer on... In May 2023, they've still got everything that goes before, they've still got the March 2022. I don't think we can say that the investigation was impacted simply because all of that still exists, they're still able to charge. So what are the facts that then answer the question for you? It's one, it's the day before they filed a complaint, that's clearly important to you. That's part of it. Two, he had given similar answers over a long period of time, so there was no good reason to think he would change his story today? That's part of it, yep. What else? I think also the... I mean, the similar answers, but also the sheer length of time that we're talking about. The fact that it's the same agent, the fact that... And I do think that this sort of backdrop about the fact that these false statement statutes can allow for the government to create offenses, I think that's really relevant here. That this is a recognized... Courts have recognized and noticed that this is, this does give agents an opportunity. And if the sort of analysis is just, well, any time... Please speak. Any time an agent is talking to someone, yes, that person's answers could impact that agent. I mean, he could have on that day said, and by the way, I saw a bank robbery yesterday and we're off and running out of bank... I mean, yes, any time anyone's talking to an agent, there could always be an impact. But at some point, the investigation into this crime, right? And this crime is what he says about Celebići sort of as he's coming to America. Can I ask you if we agreed with some of your count seven arguments, but didn't agree on the materiality argument for count six? Just returning to the remedy point. Sure. How would you suggest that we approach analyzing the appropriate remedy here? I do think that if count seven... I do think that count... I think that count seven should be vacated if it charges time barred conduct. Is that the piece of the remedy that you're talking about, the time bar? Or more about resentencing? Well, your argument is it does charge time barred conduct and the only conduct that is left once the time barred conduct and the acquitted conduct is removed is the same exact statement that's at issue in count six. Yes. So I'm just asking you to help us think through... Say we agreed with you on that, but we don't agree with your arguments about count six. How would you suggest we do the analysis on remedy? So I think there's other... I think that if count six and count seven are the same, there are reasons that you can't have both that have nothing to do with the materiality argument. So I do still think that in that circumstance that count seven needs to be vacated, because count seven is charging... In that circumstance, count seven is charging the exact same conduct as count six, which is really... And there's sort of, I think, two ways to think about this collapsing the statutory distinction piece, where either they're distinct offenses, 1001A1 and A2 are either distinct offenses. If they're distinct offenses, the way to make them distinct is to say that false statements go under A2 and other acts go under A1, in which case seven is improperly charging a false statement as an affirmative act. If you see them as sort of the same, as there's some overlap, they could charge the same conduct, you have... You raise this multiplicity problem where you are charging the exact same thing under two separate statutes. And the Blochberger presumption is that when you have the same offense like that, that you don't get two punishments and two separate offenses. And part of what you see when you read the sentencing is that the court was really, really relying on count seven. So I think there's a number of ways that count seven falls that don't rely on the materiality piece. And so I do think that this court can vacate. Did he get concurrent sentences on six and seven? I do believe it's all concurrent, but when you read the... I can double check that. But when you read the sentencing, the court repeatedly is returning to count seven and is saying, particularly given... But when that happens, when there's two... If I play your thing out to the end and there are two counts, the government picks the one to give up, from what I understand, from my memory at least. I think here where the issue is like... I guess it's sort of... Some things depend, but if you're talking about he... The problem is that they're charging a false statement as an affirmative act, then that means that seven is the improperly charged one. But if they're just charging the same thing twice because the actus reius fits two crimes, then if that's a problem, then it would seem like the government would just select the one not to go forward on, if that's a problem. I do think that resentencing would still be appropriate because when I'm talking about the courts focusing on count seven, even if count seven is somehow sort of the one left standing, the point is that the court was looking at everything, that the sentencing package doctrine matters here. And part of why it matters is because the court was making these distinctions based on the acquittals and based on what was before it. And this is a particularly, I think, complicated charging. The case was charged in a complicated way. And so I do think here, really, what goes back and what the court has to look at really does matter, and in a way that does really make resentencing appropriate here, if any of the dominoes fall. Can I ask a question about this indirect versus direct prosecution? Yes. I guess I'll just say it plainly. I was somewhat... I'm not sure this is your argument, but I was troubled by the definition of indirect prosecution, in that it said the person who's committed indirect prosecution does not have to share the intent as to the protected category of the victim. And I guess I was conceiving of indirect prosecution as akin to aiding and abetting, where you would have to share the mens rea as to the crime, and now here would be the protected category of the person. Was that your argument, or am I not really understanding your argument? I do think that's part of it. I mean, what fits awkwardly about this case, and the government keeps returning to these persecutor bar cases, and they don't make this distinction with direct and indirect. So there are, in some of those persecutor bar cases, you do see this language about you don't have to share the intent, but those cases are still laser focused on direct personal action and direct personal knowledge. So when you look at those persecutor bar cases, the one that comes to mind is there's a gentleman who was in a patrol that was blocking an escape route, and there's horrors happening in a village, and the question becomes, well, did he know what's happening in the village? And so when they are... When the cases do take it to that next step of saying, well, you didn't have to share the full intent, maybe you were just in the army because you needed money, or maybe you were just taking this job because you felt forced, but it's focusing on what did that person know, and what actions did they take with that knowledge? So it's all linked together in this way that this instruction really didn't do. This instruction carving off indirect persecution, and then I do think coupling it with this idea that you don't have to share the intent of the persecutor, the direct persecutor, I do think is part of the problem, that it's making this lesser form of persecution that you do not see in the persecutor bar cases. I mean, how would it... If direct persecution is the way it's defined, I guess what bothered me is it's the same as a guard of a prison who's just... I mean, not just, I shouldn't use the word just, who's treating the prisoners wrongly, which could be a war crime, it could be many different things, but I'm not sure it's persecution. I guess that's where I started to, like, what are we talking about? Yeah, and I think that the context is really important, because there are a few cases that talk about this. And Rodriguez Mojano and Yan Yan Lin, I'll talk about it, where there is this question about, well, what is happening? A lot of the persecutor bar cases come out of Nazi concentration camps, where it's like, we can all agree that this place was a bad place with a single bad purpose. And so anybody who's sort of actively helping with this at all, they get that. That's sort of imputed to them, and that's persecution. But then the cases that come later are sort of much more complicated. And I do think on one end of the spectrum, you do have a prison guard who... There's people in prison who are doing whatever terrible things, and they're preventing them from leaving that prison. And so the context does really matter. And Singh talks about it, and sort of makes that concentration camp versus a legitimate police force that is committing some bad acts. Rodriguez Mojano talks about civil war, and about how when someone... Which I think is really quite relevant here, when you have someone who is... I don't think anyone disagrees, right? He's joined up to protect his homeland. His homeland is under attack from people who want to eradicate it. That is what's happening in the Bosnian war. He is a Bosniak. And so I do think that all of that matters. And the way that this instruction was written, it really wipes all that off the board and creates this sort of lesser world, where you aren't thinking about the specific context, and you aren't thinking about all those factors. And our suggested instruction actually called indirect contact not... Excuse me, indirect conduct not persecution, rather than making it be this sort of lower form that maybe doesn't require the same combination of knowledge, intent, context, circumstance, everything all together. So yeah, all told, I do think that that instruction really did, especially when combined with the willful blindness instruction, really did lower... Improperly lower the burden of proof. Okay. Thank you, counsel. Thank you. At this time, would counsel of the government introduce themselves on the record to begin? Good morning. May it please the court, Karen Eisenstat, for the government. Unless the court has a different preference, I was gonna just touch on the issues in the order that counsel had touched on them. So first, with regard to the count seven sufficiency argument, so not the statute of limitations, sorry, but the other argument that some of the acquittals on counts four and five bear on the sufficiency of the evidence for count seven. Acquittals, this court has said, and the Supreme Court has said, are not relevant when we're doing sufficiency review of a convicted count. So it's not a double jeopardy question, the government has no intention of retrying any counts that were acquitted. This is purely a question of when you're looking at convicted counts, are you supposed to look into the acquittals and try to determine what the jury was thinking when they acquitted on those counts? And counsel made the argument that this is not an inconsistent verdicts argument under Dunpell, but actually that's exactly what it is. Counsel is arguing that if the court eliminates count six, which is the first predicate basis for this argument at all, that you have to agree that count six was not material, then allowing the count seven guilty verdict to stand would be inconsistent with the jury's verdicts acquitting on counts four and five. That is an inconsistent verdicts argument. It is one that's predicated on certain decisions by this court, but it's no different from an inconsistent verdicts argument. Would that be similar to the hypothetical I mentioned when you have a bank robbery or a carjacking plus a 924C, you get acquitted of the larger count, but you still get convicted of 924C. That would be the same rationale, correct? Correct. And the court that... I don't remember the name of the case, but the court's confronted exactly that situation. I've seen... There's plenty of times it's happened. Yes. So even in that situation, the court will not look under the acquittal and say, well, I guess you couldn't have possibly correctly convicted on 924C, because you didn't even think the underlying crime, the bank robbery, the drug trafficking happened. Because that would be, I think, a very crystallized issue. If you are gonna look behind the acquittal, those are completely inconsistent. And then you do look behind the acquittal if the government tries to retry it? Is that how it works? No. If there is an acquittal, we don't retry it. I mean, if there's a... If there's two counts... Actually, go ahead. I'll think of it. Right. So we would not retry him on any theory of direct persecution, because he was acquitted of that. We would not retry on the statements in counts four and five, because he was acquitted of them. So that would never be retried, and that's not what's at issue here. The question is, when we look at what was convicted, and we're thinking about sufficiency, do we need to eliminate some of the evidence that the jury heard and assume that they thought that wasn't sufficient? Or can we just look at it normally the way the court would look at any sufficiency review and say, well, there was sufficient evidence to convict on four, and they just didn't do it? And one wrinkle here is there is a special verdict question on seven that gives us insight into what the jury, to some degree, was thinking as it acquitted on that, and it does tie back to the differences between four and five on the one hand and six on the other, and we just make nothing of that in the way you would analyze it? That's correct. I think Dunpell does not allow the court to do that, because under the reasoning of Dunpell, it may have been that all the direct persecution stuff was acquitted as a matter of leniency, or we'll split the baby. Some of you think indirect, some think direct, but we'll convict him on some stuff, but the direct persecution is too much. We don't know, and that's the problem. This is fundamentally different than when the government, to be clear, is arguing based on a conviction that you can assume, for like Yates' purposes, that they convicted on certain bases, because to convict, they need to find certain things beyond a reasonable doubt. We can assume they did find those, but acquittals, as Dunpell says, we don't know why they did it, and thus it would be improper when we're doing a sufficiency review specifically to look at that. I don't disagree that for purposes of sentencing, that was absolutely irrelevant, like what's acquitted, what's not acquitted conduct. And that's just because the guidelines carved that out and make a rule about that. Correct. But there's the guidelines provision, and also, the court always has the discretion to say, I'm not gonna consider the acquitted conduct, and if the court were to want to consider it, generally, you'd wanna see on the record a judicial finding of fact, that although they acquitted on it, on the preponderance of the evidence, I find that these things occurred. So it is different also in the sense that if the court's gonna rely on acquitted conduct under 3553A, I think normally you'll see in the record, the court actually says something to that effect, that I'm making a judicial finding on a preponderance standard, what they did not find on a beyond a reasonable doubt standard, which of course we don't see in the record here, because that's not what the district court was... And I'm right to say, the rules now don't allow that, is that right? Right. So under the acquitted conduct guideline, when you're doing the guidelines calculation, acquitted conduct does not have a... How it fits into the 3553A... Right. So that's sort of a different question. And I think the court clearly recognized that, because she referenced 18 U.S.C. 3661 about there's no limitation you can place on what the court can consider. That's in reference to the 3553A factors, because of course, for the guidelines purposes, there are limitations on what the court can consider and the Sentencing Commission put those in place here. So the court was drawing that distinction, but then after having said that and saying, I'm not gonna strike these statements from other witnesses, I do think they're properly before me. She said, well, that's not necessarily saying I'm gonna consider them, and then goes on through the entire sentencing to say nothing more about them or direct persecution other than to say, I know you've been acquitted of it, I know there's a split verdict, and she mentioned that over and over, the split verdict. And the government actually asked the district court, please make a judicial finding that there was direct persecution, and the court declined to do so. So counsel, can I ask you to focus on the remedy issue? Yeah. If we agree that Count 7 charged time barred conduct, what is the government's bottom line position on what we should do next? So if he had argued in his opening brief that I would like partial vacator of Count 7, that the time barred conduct technically should not be part of it. So as in Ponce, we reverse the denial of a motion to dismiss in part. In the government's view, given that we've waived any defense in the merits on the statute of limitations issue, he would be entitled to that. That is not the same as what he has asked for, and so that's why we sort of said, it seems like he doesn't want that. But to the extent he does want that, I do think that under Ponce, he would be entitled to it. Why do you not get a new trial on the idea that, well, there was a whole bunch of stuff put to the jury on the statute of limitations, and some of it never should have been because it was time barred. They may have convicted on the non time barred, but we don't know that. How do we know that his trial was fair, where the jury would have no way to discern what's time barred and what isn't? Right. So the government actually touched on this in a footnote in our brief, footnote nine, where we just said, we don't see the defendant to be making any of these other arguments that you could theoretically make in this situation. So one is the issue Your Honor just mentioned, that was in Mubaid, where the question is, is there a possibility that the jury convicted him solely based on time barred conduct? Because that would be a Yates issue, can we tell? The answer here is that, yes, we can tell because the district court actually instructed them, you need to find at least one affirmative act of concealment after July 8th, 2019. So we know they found that. So there's no Yates issue or any concern of this was based on time barred conduct alone. In terms of, oh, there's no variance that could be prejudicial, there's no issue of evidentiary spillover, which I think is what you've been referencing. He hasn't argued it, although we did point out in our note that you could argue it, and even in his reply, he's still not arguing it, because here it's all relevant. It's still all the same scheme, it's all... The motive for lying later is that he lied before to get immigration benefits, so it's not a good thing to admit now that you've lied, because you can lose those benefits. So all of that still would have come in. I don't think there's any dispute from the defendant that all the evidence was admissible that did come in, it doesn't change that analysis. And he didn't argue multiplicity or merger, which I think goes to what Judge Rickleman was talking about. There is an argument to be made, I think, in this case, that the two counts would merge. I think multiplicity is probably not a perfect fit, because this doesn't fail the Blockburger test, but there's this separate doctrine from the court that, well, there's sometimes when we look at these two counts, and technically it passes Blockburger, but we don't interpret Congress as having meant this to be two punishments, two crimes. So for example, the situation of someone who's a drug addict in possession... A felon and a drug addict in possession of a weapon, we can charge both, we charge both. That was the Shea case, I think. And then the court says, you know, we just don't think you get to keep both, like these two seem redundant to us, so we will merge them. Same, the court has made that same type of holding merger with respect to distribution of drugs and possession with intent to distribute, if the only act that we prove is the moment of distribution. Same thing, those merge into the distribution. So to the question of remedy there, setting aside that he's waived the argument, he hasn't made it, even in his reply brief, he's trying to say it's the same thing as surplusage, which it most certainly is not. So putting aside the waiver and the fact that I think it was forfeited below, because it can be raised at least at sentencing, and it wasn't, and the court has said then it's a plain error question, and then also that it's not plain because there's no case law and it's a statute by statute type of determination from this court. So putting all of this sort of procedural issues aside, what happens then is that the government can elect a count to keep because we can't keep both. There's nothing wrong with trying both though, and I think the Stewart case that defendant cites makes that point also, that you can go to the jury on more than one theory, you just, if they convict on both, then you keep one. We elect one to keep, or there are cases that suggest, well, they obviously will merge into the more serious ones. So for distribution and possession with intent to distribute, they merge into distribution. They never would merge into just the possession count because that doesn't make any sense. The government had a right to go to the jury on the count that they went to the jury on and they were convicted on. So we do get to keep that count. And I'd like to also note that counsel has suggested, I think for the first time now, an argument that getting rid of part of count seven would support resentencing. That's not an argument they made in their opening brief because they didn't want to get rid of just part of count one. It's not even an argument they're making in their reply brief. In the reply brief, they said, well, if you if you don't agree with us on the surplus issue, so avoids the count entirely, then you can remand. So I can argue to the district court reasons, other reasons which I've not specified, not identifying yet. And I didn't raise this court for why I should still get full vacator of count seven. If you look at page seven of the reply brief, that is the only thing still that they're asking for. There's no suggestion that a partial vacator of count seven to resolve the statute of limitations issue would support resentencing. And there was no resentencing issue in Ponce either. And I think it's just because it's understood it's all relevant conduct for sentencing purposes. It doesn't really change what's before the court for sentencing. And if you look at the merger multiplicity case law, it's consistent in saying that other than situations, rare situations where the court went above the statutory maximum for just one conviction or where it's a multiplicity issue where there's like 50 convictions and there really should have been one. And there's a question of, well, is the fact that there's 50 somehow weigh in the analysis? But here, when you look at the sentencing, the court really was focused on count seven. So to the extent everything then merges into count seven and that indirect persecution finding, there's just no basis for resentencing. And the defendant really hasn't asked for that except today at oral argument. I want to touch also on the direct and indirect issue that Judge Aframe raised. So this court said in the Catangua case, in cases where a criminal case where an immigration law standard is relevant to determining materiality for the criminal statute, properly drafted instructions to explain that immigration law standard can be helpful. And that's what this instruction was. So it is reference to an immigration law standard and not a criminal standard, which I think may explain why it doesn't really operate the same way as, say, an aiding and abetting sort of thing in a criminal statute would. It's not sort of meant to. I don't think this is truly like, would it be material in determining whether he can get naturalization, et cetera, to the person making that decision. And they are applying an immigration law standard. And this court has said. There is a form that I saw on the record that this is a question that's asked of someone. Yes, it was previously on the N-400. That's the naturalization application that he filled out and signed. So that was the basis of sort of those charges. And I think counts one, two, three. But then the law of indirect persecution comes out of questions of denaturalizing people who lied about that or? No. So the law of indirect. So to be clear, this court has said in Alvarado versus Whitaker, which is a persecutor bar case, it's an immigration law case, that the people who actively carry out persecution need to have a persecutory motive. So it's not really a mens re issue. It's a motive on account of race, religion, nationality, et cetera. And then held that those who assist or otherwise participate in persecution do not need to share that motive. So when the court gave that instruction, that's tracking what this court has said under Alvarado versus Whitaker. That is the standard under the persecutor bar, which is the relevant question for purposes of would this have been material in terms of his immigration benefits that he was seeking. That's strange just to me. Because what distinguishes an indirect persecution from an assault? What? What distinguishes an indirect persecution from I have assaulted someone, someone else is persecuting them, and I choose to kick them. I have no motive other than to kick them, which I would think of as an assault. But because the other person is doing something else to them that's badly motivated, I have engaged in indirect persecution, right, under that theory? I'd have to look at the case law as to whether that would work. But I do agree that the way the persecutor bar is defined in using immigration law is not like the same as you would do for like a criminal statute if we're just prosecuting for persecution. I don't think it would work that way. It seems like it just boiled it down to someone else is doing something and you're helping in some way and no matter your reason for helping is irrelevant. I think that's essentially what the persecutor bar case law says. I mean, it is fairly broad. And I think I'd also note in addition to all of this is that U.S. counsel with this is the argument counsel made. And I think very clearly it is not the argument counsel made. So counsel said the instruction is confusing and didn't like the use of the labels direct and indirect, but doesn't actually challenge the content of what the court said and say that that's broader than the persecutor bar actually is. There's no claim to that effect. There was one, I think, in the district court and that makes it even more obvious that that claim is not before this court now. This is consistent with the persecutor bar case law. The application of the labels themselves are not really substantive. It's just a way to organize the concepts from Alvarado versus Whitaker. And then, of course, since we're giving the jury the indictment language which contains indirect and direct, and the defense wanted the jury to have that language. And then telling them they need to fill out a special verdict form and check one, the other, both, neither, the court, you know, it said, well, I'm going to explain to them what's meant by those things for purposes of the case. I don't see how that's a misstatement of law or confusing. Can I ask one question on the expert testimony piece? So, I understand this issue in the Rwanda context and there's an issue there that comes up where people may testify in a certain way to agree that the person on trial has done it because the present government kind of wants that. And so, to get that out there as evidence to then question, you know, maybe some of these witnesses are not telling the truth because they're motivated by a desire to curry favor with the government is a way to try to create an idea of bias in the witnesses. And you're saying that this is different and I just want to understand why it's different. So, I think what's going on here is that he wanted to offer testimony of witness bias that his expert could not target any more narrowly than an entire ethnic group. So, it's Serbs in Serbia, Serbs in the Republic of Srpska, and the Serbian diaspora which is literally all Serbs. And I think that's what the, and on the topic of the Bosnian War. So, it's also very broad in terms of the topic. I think that's what the district court's reacting to. This is a 403 determination. It's an abuse of discretion review. And the court's looking at that and I don't see how it could be an abuse of discretion to say, you know, you're free to ask any of the witnesses about any of these things. Have you been exposed to this propaganda? Do you believe in any of these things? But it goes too far to allow you, it's too inflammatory to allow an expert just to get up there, tether it to nothing that any witness, you know, any particular witness says or does and just say, you know, Serbs are lying about the Bosnian War. They consistently do that. All of them do that or at least we can't tell who does or not. So, you should assume they all do. That's sort of the issue. And I think when you're talking about the issue of government pressure like with the Rwandan stuff, that was, that came in in Tagania. That was the defense expert who said it, not the government expert. And the government did not, in fact, object to it. But that's, I think, because the government was putting on their own expert to say things of a similar ilk, so it wasn't really in a good position to object or appeal on that basis. But I just note that, like, because it's an abuse of discretion standard and it's very case specific, to say that it might have not been an abuse of discretion of the court allowed it doesn't necessarily mean it's an abuse of discretion that the court here looked at it and said, ugh. That's certainly right. Is the difference, though, if I'm trying to align those different ideas in my mind, is one just more specific? Like, there's a real identified problem of the government's, Rwandan government acting in a certain way that's more specific? Yes. I think that's, that is the difference. If the court, the court was, I think, very clearly reacting to how broad this was and that it really is an entire ethnic group and that there was nothing the expert was going to say that would narrow it in any way from that. It wasn't like victims of, from this prison or victims generally of persecution tend to, you know, exaggerate. You know, it wasn't anything like that. It truly was that all of them are trying to whitewash what happened in the Bosnian War, which is just too broad. Thank you. Thank you, Counsel.  Would Counsel for the appellant please reintroduce herself on the record to begin? Chrissy DeMasso for Kamal Marincic. I just want to point out an important, I think, concession that the government made at the beginning and then returned to this expert issue quickly. At the beginning, the government said that if there were to be a retrial for some reason, it would not retry on any theory of direct persecution or based on the statements charged in Counts 4 and 5. So I think the government has just conceded the preclusive effect of the acquittals on Count 4 and 5. If they would not retry based on the statements made in Counts 4 and 5, they cannot now use the statements made in Counts 4 and 5 to support Count 7. So moving to the expert issue. What's your best case for that, McElrath, like the double jeopardy cases? Do you have a case in the context of one prosecution where that's the analysis? Unfortunately, I didn't find a case that sort of follows the facts that we have here. It is sort of, I think, a one-off based on the way that it was charged. But yeah, the McElrath, Ash, Bravo, Fernandez, that sort of thing. Because their counter-argument, I know you push back against inconsistent verdicts, but I mean, that's the idea, which is, yeah, we can look at that verdict and I can put on my best, you know, guess to it, but I shouldn't be doing that. And I should just be asking sufficiency, which I guess is a question I asked you in the first round, and you told me, don't do that. Right. I mean, I understand their argument and I've made mine, but I do think when they're saying that we recognize there is a preclusive effect to these acquittals, that that preclusive effect applies right now just as much as it would on any retrial. And that simply is. Like, if it can't be retried on the statements in count four and five and they agree with that, then they can't support count seven now, that the acquittal means that and it's over. So moving to the expert briefly, this testimony was exactly like the expert witness testimony offered in Taganya. The testimony in Taganya was basically the Rwandan government produces this sort of propaganda, this messaging, they want people to lie for the following reasons. This is what they do and it is widespread and it is sort of over. Anyone who's hearing it, this is what they hear. The testimony here would have been the same and the government keeps saying that, well, he was going to get up and testify that all Serbs lie or everyone's lying. That was not the testimony at all. The testimony was the Serbian government is producing this particular propaganda. The government agreed that this propaganda exists and this propaganda is essentially telling people that, hey, not only did the Serbian government not do bad things during the war, but also bad things were done to us that were underreported, understated. And the testimony was simply that this propaganda exists and the witnesses were part of it. You know, the government acknowledged that it's relevant. Witnesses testified about it, but without this sort of critical testimony from someone explaining what is happening, why, you know, sort of what is the messaging, how pervasive is it, what's it coming from, that, you know, the sort of lay witnesses weren't able to provide that. And this expert witness testimony was critical and directly in line with expert testimony that both the government and defense have offered in so many other cases. And the government's only response is to mischaracterize it as testimony that would have said all Serbs lie when it was simply not the testimony. You agree it's a 403 question? I do think that the court talked both about the expert standard and then also mentioned 403. I do think that here, you know, 403, yes, the standard on appeal is a heavy one, but also, you know, 403 talks about being the prejudice significantly outweighing. And that has real meaning. These were the critical issues, excuse me, witnesses in this trial. And this was critical testimony. The government doesn't say that it's wrong or that this witness was, you know, making it up or overstating it. The government acknowledged that it was relevant to get into this type of bias with these witnesses. And I think in the particular circumstances of this case, this testimony was critical and excluding it was error, abuse of discretion, even if we're looking under just 403. Thank you. Thank you, counsel. That concludes argument in this case.